OPINION
Clifford Dwayne Ferguson, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas for two counts of rape, a violation of R.C.2907.02; one count of sexual battery, a violation of R.C. 2907.03; and one count of attempted rape, a violation of R.C. 2907.02 and2923.02. We affirm in part and reverse in part.
On September 27, 1997, an incident occurred between appellant, Sherrie Cecil, and Mike McKahan. Sherrie has been diagnosed as schizophrenic and Mike is "developmentally delayed or mentally retarded" as the result of contracting viral encephalitis when he was fourteen months old. Sherrie and Mike had been dating each other prior to the incident. According to Sherrie and Mike, appellant participated in sexual acts with them at Mike's apartment while playing a game of "strip pool." Sherrie testified that appellant taught Sherrie and Mike how to play strip pool. The rules of the game entailed losing players removing an article of clothing and performing a sexual act. Sherrie testified that she was "scared to death" and Mike testified that "if we didn't follow the rules of strip pool, [appellant] had a loaded gun in his car * * * if you didn't follow his rules, he would kill us both."
On March 18, 1998, appellant was indicted for two counts of rape with specifications, two counts of sexual battery with specifications, one count of attempted rape, and three counts of gross sexual imposition. The specifications alleged that appellant was a sexually violent predator pursuant to R.C.2941.148. Before appellant's trial, three of the counts in the indictment were dismissed and two of the counts were amended. In April 1999, appellant was tried before a jury. The state presented seven witnesses including Sherrie and Mike. Appellant's counsel presented no evidence in appellant's defense and pursuant to Crim.R. 29, argued that the state had presented insufficient evidence to find appellant guilty of the alleged crimes. The court overruled appellant's Crim.R. 29 motion and submitted the matter to the jury.
The jury found appellant guilty of one count of sexual battery, two counts of rape, and one count of attempted rape. The jury also found appellant not guilty of gross sexual imposition. When sentencing appellant, the court merged one of the rape offenses with the sexual battery offense. The court sentenced appellant to serve five years in prison for both counts of rape and two years in prison for the attempted rape conviction. The court ordered appellant to serve the rape convictions consecutively and the attempted rape conviction was to be served concurrently with the rape convictions. Appellant appeals his convictions and presents the following three assignments of error:
 I. Appellant's convictions for rape as charged in count three and attempted rape as charged in renumbered count four were not supported by the evidence as the state failed to prove beyond a reasonable doubt that the conduct was forcible, and not consensual.
 II. The evidence was insufficient to sustain appellant's convictions for rape, as charged in count one, and sexual battery, as charged in count two, and his conviction on these counts was against the manifest weight of the evidence.
 III. The trial court erroneously admitted hearsay under the excited utterance exception to the hearsay rule.
Appellant argues in his first assignment of error that his convictions for rape and attempted rape, as charged in counts three and four of the indictment, were not supported by the evidence. Appellant claims that the evidence shows that the sexual acts that occurred between he and Sherrie were consensual and not because of force or threat of force. We agree.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998), 523 U.S. 1125, 118 S.Ct. 1811, following State v. Thompkins (1997), 78 Ohio St.3d 380, 387. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1998), 525 U.S. 1077, 119 S.Ct. 816, followingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781 andState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons at 444.
Count three of the indictment alleged that appellant engaged in sexual conduct with Sherrie when either: (1) her "ability to resist or consent was substantially impaired because of a mental or physical condition," or (2) appellant purposely compelled Sherrie to submit to sexual conduct "by force or threat of force." Count four of the indictment contained similar language regarding appellant attempting to engage in sexual conduct. Prior to appellant's trial, counts three and four were amended after Sherrie was evaluated by Dr. Paul Goldstein, a clinical psychologist. Dr. Goldstein determined that "at the time of the alleged offenses, Ms. Sherrie Cecil's ability to resist or consent to sexual conduct or sexual contact was not substantiallyimpaired because of her mental or physical condition." (Emphasissic.) The counts were amended by removing the language "ability to resist or consent was substantially impaired because of a mental or physical condition" from both counts. Therefore, in order to show that appellant was guilty of rape and attempted rape, the state was required to show that appellant purposely compelled Sherrie to submit to the alleged acts "by force or threat of force."
R.C. 2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." A victim does not need to prove physical resistance to the offender in prosecutions under R.C. 2907.02. R.C. 2907.02(C). Sexual conduct is defined as including vaginal intercourse between a male and a female, and cunnilingus between persons regardless of sex. R.C.2907.01(A).
In the present case, there is no question concerning whether appellant and Sherrie engaged in sexual conduct. Sherrie's unrefuted testimony was that appellant performed cunnilingus on her and that appellant attempted to engage in vaginal intercourse with her. Therefore, the main question before this court is whether sufficient evidence was presented to show that appellant purposely compelled Sherrie to submit to sexual conduct by force or threat of force.
Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). In State v. Schaim (1992),65 Ohio St.3d 51, the Ohio Supreme Court stated:
 A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct * * *. Id., at paragraph one of the syllabus.
"As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." State v. Eskridge (1988), 38 Ohio St.3d 56, 59.
In the present case, Sherrie testified that she met appellant at a bar where he and Mike were playing pool. She testified that appellant and Mike made arrangements for the three of them to meet later at a fast food restaurant located within walking distance of the bar. She stated that she and Mike got in appellant's car and the three of them went to Mike's apartment. When asked whether she wanted appellant to go to Mike's apartment, she stated "[i]t didn't matter to me."
Sherrie testified that once they got to Mike's apartment, they "went right straight into the basement" to play pool. She described the pool game they played as "strip pool" and that appellant told them how to play the game. She described the rules as follows:
 Everybody got a certain number of balls that were on the table, and if that ball — one of your numbers came up on the ball and you shoot the ball in, you have to take an article of clothing off.
Sherrie testified that once everyone was not wearing any clothing, they continued to play strip pool except appellant changed the rules. The new rules required a person who knocked a ball in "to do certain things to another person's body, whoever's ball you knocked in." Sherrie stated that she was scared and thought that she was going to be raped. She also stated that she played the game so appellant would not hurt her. However, she also testified that appellant never told her that he would hurt her.
Sherrie testified that appellant touched her breast with his hands and with his mouth. She also testified that he touched her vagina with his mouth. She stated that she knocked one of Mike's pool balls into a pocket on the table, which meant that appellant was to tell her what she was supposed to do to Mike. She testified that appellant told her to make Mike ejaculate by performing fellatio on him. She further testified that she touched Mike's penis with her hand but was not able to touch it with her mouth. She stated that she then went upstairs because she felt nauseous but returned to the basement because she was worried about Mike. Upon her return, Sherrie testified she told appellant "to do it to Mike because I wouldn't do it." Thereafter, appellant performed fellatio on Mike.
Sherrie stated that they continued to play pool and that "[w]e all played the game, and we all touched each other." Sherrie testified that while she was lying on the floor appellant touched her on her breast with his hands and then began performing cunnilingus on her. She stated that she "wanted up, but I didn't know how to. I didn't think of that at the time." On direct examination, Sherrie testified as follows:
Q. Were you nervous?
A. I was mad because — I was real scared.
Q. Well, he didn't tell you he would hurt you, did he?
A. No. I was thinking about what he was going to do next.
Q. Did you ever tell him to stop?
A. Yes.
Q. When?
 A. Right before we started to get carried away, I said — I said, will you do me a favor? Will you stop a minute? And he said, sure. And I go, can we do something first? Can you just get your clothes on and leave? And he did.
* * *
Q. Did he threaten you?
A. No.
Q. Did you hear him threaten Mike?
A. No.
Sherrie further testified that she told appellant to stop because she did not want to get pregnant and because Mike looked like he was upset and terrified. She further stated that she did not want appellant to have vaginal intercourse with her because "I felt kind of scared because I wouldn't have something like that happen in front of Mike." She also stated that when appellant attempted to have vaginal intercourse with her, she did not do anything with her hands or her body and that she was "stiff as a board."
During cross-examination by appellant's counsel, Sherrie stated the following conversation occurred between the three of them on the way to Mike's apartment:
 Q. Was there any discussion — did anybody say anything on the way over there?
A. Mike was talking, but I don't remember about what.
Q. Was anybody else talking?
A. No.
 Q. Specifically, on that trip over there, was there anything said to you by this other person to threaten you?
A. No.
Q. Did they say they had a gun?
A. No.
Q. Or a knife?
A. No.
Q. Or they were going to hurt you?
A. No.
 Q. The whole idea with everybody — as I understand what you told us yesterday, the whole idea was that everybody was going there to play pool?
A. Yes.
* * *
 Q. Throughout this entire event and until the person got his clothes and left, that person never struck you?
A. No.
Q. Never threatened you?
A. No.
Q. Never threatened to hurt you?
A. No.
 Q. Never said they would do bad things to you if you didn't cooperate?
A. No.
 Q. So everything was kind of done — was done as a part of this game you were playing, wasn't it?
A. I don't think so.
Q. Can you tell me what was not part of the game?
 A. The part where I was lying on the floor and he started touching me and biting me and everything.
 Q. But was he threatening you or forcing you in any way?
A. No.
 Q. And, in fact, when you said, this is going too far, stop and leave, that's exactly what happened, right?
A. Yes.
 Q. The first time you indicated * * * that you did not want to be involved or do these things, this person stopped?
A. Yes.
Q. And left, as you asked?
A. Yes.
After a review of all of the evidence in the present case, in a light most favorable to the state, we find that insufficient evidence was presented to prove beyond a reasonable doubt that appellant purposely compelled Sherrie to submit to sexual conduct by force or threat of force because no evidence was presented that appellant used force or threatened to use force on Sherrie. Additionally, both times Sherrie indicated that she did not want to participate in sexual acts, appellant made no attempt to force her to continue. The fact that Sherrie was able to tell appellant "no" and finally told him to leave the apartment does not indicate that her will was overcome by fear or duress. Further, the rules of the game of "strip pool," as explained by Sherrie, were such that any sex acts performed by appellant towards Sherrie were directed by Mike, and any sex acts performed by Sherrie towards appellant were dependent upon Sherrie hitting one of appellant's pool balls into a pool pocket.
The state argues that appellant threatened force upon Sherrie based upon Mike's testimony that appellant stated, "if you didn't follow his rules, he would kill us both." While Mike agreed that "Sherrie was around to hear that," this does not establish that Sherrie heard the threat in light of Sherrie's unwavering testimony that appellant never threatened her.
Accordingly, we find that insufficient evidence was presented to sustain appellant's conviction of rape as stated in count three of the amended indictment. Additionally, since attempted rape in the present case also requires evidence that appellant intended to compel submission to sexual conduct by force, in addition to committing some act that convincingly demonstrates such intent, we find that insufficient evidence was presented to sustain appellant's conviction for attempted rape as stated in count four of the amended indictment. See State v.Davis (1996), 76 Ohio St.3d 107, 114. Appellant's first assignment of error is sustained.
Appellant argues in his second assignment of error that insufficient evidence was presented to sustain his convictions for rape and sexual battery of Mike. Counts one and two of appellant's indictment alleges that he committed rape and sexual battery by performing fellatio on Mike. In addition to alleging that appellant compelled Mike to submit by force or threat of force, count one also states that Mike's:
 * * * ability to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age, and [appellant] knew or had reasonable cause to believe that [Mike's] ability to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age * * *.
Count two alleges that appellant engaged in sexual conduct with Mike and "knew that the ability of [Mike] to appraise the nature of or control his own conduct was substantially impaired."
There is no question whether appellant and Mike engaged in sexual conduct. Both Sherrie and Mike testified that appellant performed fellatio on Mike. Instead, appellant argues in his assignment of error that there "was no proof of force" or that appellant "knew or had reasonable cause to know [Mike's] mental impairment affected his ability to consent." We will first examine the evidence to determine whether sufficient evidence was presented to show that appellant used force or the threat of force. We will then examine the evidence to determine whether sufficient evidence was presented to show that Mike's ability to resist or consent was substantially impaired and that appellant knew of this condition pursuant to R.C. 2907.02(A)(1)(c).
Mike testified that appellant told him at his apartment "if we didn't follow the rules of strip pool, see, he had a loaded gun in his car, though, and in his car, though. But if he didn't — if you didn't follow his rules, he would kill us both, though." However, when asked whether appellant said anything to scare Mike, Mike stated "no." Mike also testified that he never saw a gun or a knife that night. Additionally, Mike agreed that appellant made the statement about the gun "[a]fter all the sex went on." Although Mike testified that he was scared, a review of Mike's testimony fails to show that he at any time was scared of appellant or that appellant compelled him to participate in sexual conduct. Therefore, we find that insufficient evidence was presented to prove that appellant compelled Mike to engage in sexual conduct by threat of force pursuant to R.C. 2907.02(A)(2).
R.C. 2907.02(A)(1)(c) states in part that no person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender when:
 The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.
Therefore, in order to prove whether appellant committed rape pursuant to R.C. 2907.02(A)(1)(c), sufficient evidence must have been presented to show that: (1) Mike's ability to resist or consent was substantially impaired because of a mental or physical condition, and (2) appellant had reasonable cause to believe or had knowledge of Mike's impaired ability to resist or consent. R.C. 2907.03(A)(2) is similar to R.C. 2907.02(A)(1)(c) in that it states that no person shall engage in sexual conduct with another who is not the spouse of the offender when "[t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
Dr. Chris Khellaf, a clinical and forensic psychologist, interviewed Mike in order to determine whether he had the ability to be a competent witness and whether he had a limited ability to resist or consent to sexual conduct. Dr. Khellaf testified that Mike "functioned within the lower range of mental retardation" comparable to an early adolescent. Dr. Khellaf stated that in his opinion, to a reasonable degree of psychological certainty, Mike did not have the mental capacity to resist or consent to sexual activity. He also stated that Mike's "social and interpersonal capacities were extremely limited." Dr. Khellaf also gave examples of Mike's limitations based upon his interview with him.
 I asked [Mike] if somebody approached him on the street, he was walking down the street and somebody would approach him and just out of nowhere, and he says, let's have sex, and [Mike's] response was if they — if I don't have a girlfriend, then yes, I will have sex. And that's highly inappropriate and really speaks of the limitations and his understanding of the implications of sexuality or engaging in a sexual act.
 I asked him if he were at a park, just sitting there in a park and somebody would approach you and ask the same thing? And he gave the same response, and he would do it anywhere, at a park, in a street, at a hotel. When asked if he did not have a girlfriend, he would engage in such acts if he is approached and asked about to engage in those acts.
Concerning whether appellant had reasonable cause to believe or had knowledge of Mike's impaired ability to resist or consent, Mike stated that he had known appellant for about eight years. Mike also stated that he "used to hang out with [appellant] all the time" at a bar. Additionally, the jury had the opportunity to see Mike's demeanor while he testified and therefore, they also had the opportunity to determine whether Mike's mental capacity was impaired in such a way that appellant should have known that Mike's ability to resist or consent was impaired.
After reviewing the evidence in a light most favorable to the state, we find that sufficient evidence was presented to prove beyond a reasonable doubt that appellant committed rape pursuant to R.C. 2907.02(A)(1)(c). Sufficient evidence was presented to show that Mike's ability to resist or consent was substantially impaired because of his mental or physical condition and that appellant had reasonable cause to believe or had knowledge of Mike's impaired ability to resist or consent. We also find that sufficient evidence was presented to prove beyond a reasonable doubt that appellant committed sexual battery pursuant to R.C. 2907.03(A)(2). There was sufficient evidence presented to show that appellant knew that Mike's ability to appraise the nature of the situation or to control his own conduct was substantially impaired. Appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the trial court erred when it admitted hearsay evidence from Dorothy McKahan, Mike's mother, who testified concerning what Mike told her about the events between Sherrie, Mike, and appellant that evening. The trial court allowed Dorothy's testimony based upon an exception to the hearsay rule.
"Reviewing courts should be slow to interfere with a court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced thereby." Reinoehl v. TrinityUniversal Ins. Co. (1998), 130 Ohio App.3d 186, 194. Dorothy's testimony regarding what Mike had told her supported Mike's later testimony of what occurred that evening between Mike, Sherrie and appellant. However, we found in appellant's second assignment of error that an examination of the complete record failed to show that sufficient evidence was presented demonstrating that appellant compelled Mike to submit to sexual conduct by force or threat of force. We then determined that appellant's convictions for violating R.C. 2907.02(A)(1)(c) should be affirmed based upon evidence that Mike's ability to resist or consent was substantially impaired because of his mental or physical condition and that appellant had reasonable cause to believe or had knowledge of Mike's impaired ability to resist or consent. A review of Dorothy's hearsay testimony shows that she did not provide evidence to support a finding that appellant violated R.C.2907.02(A)(1)(c). Therefore, based upon our disposition of appellant's second assignment of error, we find that appellant was not materially prejudiced by Dorothy's hearsay testimony. Appellant's third assignment of error is overruled.
Accordingly, we sustain appellant's first assignment of error and reverse appellant's convictions for counts three and four as stated in the amended indictment. We overrule appellant's second and third assignments of error and affirm appellant's convictions for rape and sexual battery as stated in counts one and two of the indictment. We remand the present case to the trial court for further proceedings that are consistent with this opinion.
Judgment affirmed in part; reversed in part; cause remandedwith instructions.
 ________________________________ BROWN, PRESIDING JUDGE
BOWMAN, P.J., and DESHLER, J., concur.